UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
RALPH G. POTENTE, RICHARD J. JANKURA,

                              Plaintiffs,

                      - against -

CITIBANK, N.A.,

                              Defendant.
----------------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**
16-cv-3969 (ADS)(AYS)

**APPEARANCES:**

**Stephen C. Silverberg**
*Attorney for the Plaintiffs*
626 RXR Plaza
Uniondale, NY 11556
      By:    Stephen C. Silverberg, Esq., of Counsel

**Bryan Cave LLP**
*Attorneys for the Defendants*
1290 Avenue Of The Americas
New York, NY 10104
      By:    Daniel H. Lewkowicz, Esq.,
                Noah M. Weissman, Esq., of Counsel

**SPATT, District Judge:**

The Plaintiffs Ralph G. Potente ("Potente") and Richard J. Jankura ("Jankura") (collectively, the "Plaintiffs") brought this action against the Defendant Citibank, N.A. (the "Defendant" or "Citibank") for, *inter alia*, alleged violations of the Truth in Lending Act, 15 U.S.C. 1601 ("TILA").

Presently before the Court is a motion by the Defendant to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6). For the following reasons, the Defendant's motion is granted in its entirety.

# I. BACKGROUND

## A. The Factual Background

The following facts are drawn from the complaint, and for the purposes of the instant motion, are accepted as true.

The Plaintiffs reside at 47 Berry Hill Road, Oyster Bay Cove, NY 11771 (the "residence"). The Plaintiffs have lived there since 1997. The Plaintiffs apparently had an initial mortgage of $1,000,000, secured by their interest in the residence. The complaint does not state who held the initial mortgage.

In 2008, the Plaintiffs applied for a mortgage refinance with Citibank. During the application process, Citibank ordered an appraisal of the residence. The appraisal valued the residence at $2,200,000. Citibank informed the Plaintiffs of the appraisal, but the Plaintiffs claim that they never received a copy of the appraisal. The complaint does not state precisely when the appraisal occurred, but it happened before the final approval of the loan.

On April 18, 2008, the Plaintiffs executed a Consolidation, Extension, and Modification Agreement (the "CEMA") with Citibank. Pursuant to the refinance, the Plaintiffs borrowed $700,000 from Citibank. The Plaintiffs allege that they relied upon the purportedly inflated appraisal of $2,200,000 when they signed the CEMA and agreed to take the loan.

The CEMA loan was secured by the Plaintiffs' interest in the residence. Despite the fact that the Plaintiffs allege that it was a mortgage refinance, it is not clear from the face of the complaint whether the initial mortgage was repaid. Nevertheless, the Plaintiffs allege that the mortgage was transferred to an unknown third party.

In July of 2014, the Plaintiffs "discovered" that the $2.2 million appraisal was "grossly inflated," and that the "actual fair market value of the property at the time of the execution of the CEMA was $1,200,000." (Compl. ¶ 8).

In April of 2016, the Plaintiffs mailed a notice of rescission to Citibank. Citibank received the notice on April 22, 2016. Citibank has allegedly refused to honor the notice of rescission.

**B. The Relevant Procedural Background**

On July 15, 2016, the Plaintiffs commenced this action by filing a complaint. The complaint alleges four causes of action. However, one of the causes of action is merely a request for injunctive relief, which is not a cause of action. *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D.N.Y. 2014) ("[I]njunctions are remedies, not causes of action . . . ."). The three remaining causes of action are for fraud in the factum, appraisal fraud, and violation of TILA.

The Plaintiffs did not serve the Defendant with the summons and complaint until February 23, 2017.

On April 14, 2017, the Defendant filed the instant motion to dismiss.

## II. DISCUSSION

**A. The Relevant Legal Standard**

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

**B. As to the Defendant's Exhibit**

The Defendant attached one exhibit with its motion and memorandum of law—a document that purports to be an appraisal of the residence commissioned by Potente on December 10, 2013 (the "December 2013 appraisal"). The December 2013 appraisal values the residence at $990,000. The Plaintiffs do not dispute that the document is what it purports to be. Indeed, the Plaintiffs state that "at the end of 2013, [Potente] sought a reduction in the principal amount of his mortgage and ordered the appraisal of the property. . . The appraisal was completed on December 13, 2013[, and was] effective December 12, 2013." (Pl.'s Mem. of Law in Opp. at 13). Instead, the Plaintiffs argue that:

> [they] did not fully grasp the significance of the appraisal value until mid-2014 . . . . There is nothing in the appraisal that would indicate the date when the plaintiff[s] would have known or should have known that the evaluation of the property in 2008 was improper. All [they] had was a valuation as of the end of 2013 after the real estate market had suffered from a broad devaluation of property values caused by the Great Recession and the Mortgage Foreclosure Meltdown.

(*Id.*).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Therefore, when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which she relies and which is integral to the complaint, the court may nevertheless take that document into consideration in deciding a defendant's motion to dismiss, without converting the motion into one for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

However, when a party submits additional evidence to the Court in connection with a motion to dismiss, beyond the scope of those allowed under *Brass* and *Cortec*, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R .Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Mgrs. of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(b); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366.

5

Here, the Court finds that the Plaintiffs possessed the appraisal, and either relied upon or should have relied upon the appraisal in bringing suit. The Court uses the phrase "should have relied," because, as discussed below, the December 2013 appraisal put the Plaintiffs on notice as to the Defendant's alleged fraud. That is, the Plaintiffs "discovered" the alleged fraud no later than December 2013.

Accordingly, the Court will consider the December 2013 appraisal without converting the motion into one for summary judgment.

**C. As to the Plaintiffs' Claims**

    **1. Fraud in the Factum**

        **a. The Applicable Law**

"Fraud in the factum occurs when the maker of the note is tricked into believing that which he is signing is something other than a promissory or obligatory note. . . . [It] occurs in those rare cases where the misrepresentation is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 91 (2d Cir. 1994) (internal citations, quotation marks, and alterations omitted).

Relevant here, "[b]y contrast, fraud in the inducement consists of misrepresentations that cause the maker of the note to enter the transaction." *Id.* (internal citations and quotation marks omitted).

Under the New York C.P.L.R., a plaintiff must bring a claim for fraud within six years from the date of the alleged fraud, or two years from the time the plaintiff could have discovered the fraud with reasonable diligence. N.Y. C.P.L.R. § 213(8); *see also id.* at § 203(g) ("[T]he time within which an action must be commenced is computed from the time when facts were discovered

or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer."); *Gonzales v. Nat'l Westminster Bank PLC*, 847 F. Supp. 2d 567, 570 (S.D.N.Y. 2012) ("Under New York law, an action based on fraud must be brought within six years of the commission of the alleged fraud, or two years from when a plaintiff was aware (had specific notice) or should have been aware of enough facts such that they could have discovered the fraud with reasonable diligence (had 'inquiry notice'). This is known as the 'discovery rule.'" (citing N.Y. C.P.L.R. §§ 213(8), 203(g)).

However, claims for fraud in the factum are not subject to N.Y. C.P.L.R. § 213(8). *See Faison v. Lewis*, 25 N.Y.3d 220, 225–231, 32 N.E.3d 400 (holding that contracts that are void *ab initio*, such as those where fraud in the factum is shown, are not subject to the statute of limitations), *reargument denied*, 26 N.Y.3d 946, 38 N.E.3d 806 (N.Y. 2015).

### b. Application to the Facts

It is clear that the Plaintiffs have attempted to circumvent the statute of limitations by pleading that this is an instance of fraud in the factum rather than one of fraud in the inducement. It is similarly clear that the Plaintiffs cannot sustain a cause of action for fraud in the factum.

The Plaintiffs do not dispute that they knew that they were signing a promissory note. (*See* Compl. ¶ 21 ("On April 18, 2008, . . . [the] Plaintiff executed a promissory note with CITIBANK.")). The Plaintiffs do not allege that the Defendant misrepresented "the very character of the proposed contract itself," or that it induced the Plaintiffs "to sign a document by falsely stating that it has no legal effect." *Revak*, 18 F.3d at 91; *see also id.* ("[P]laintiffs nevertheless were signing just what they thought they were signing: a note and a deed. Therefore, the fraud

7

claim against the Banks, as holders in due course, was properly dismissed." (internal citations and quotation marks omitted)); *Torres v. Major Auto. Grp.*, No. 13-CV-0687 NGG CLP, 2014 WL 4802985, at *6 (E.D.N.Y. Sept. 25, 2014) ("Fraud in the factum occurs when the maker of a note is tricked into believing that which he is signing is something other than a promissory or obligatory note." (internal citations and alterations omitted)); *Provident Bank v. Cmty. Home Mortg. Corp.*, 498 F. Supp. 2d 558, 574 (E.D.N.Y. 2007) ("Where, as here, there is no evidence that the mortgagors were unaware that they were signing mortgage notes, or were falsely informed as to the nature of the notes, fraud in the factum cannot be asserted."); *In re Joe Sipala & Son Nursery Corp.*, 214 B.R. 281, 288 (Bankr. E.D.N.Y. 1997) (holding that fraud in the factum "is only available when trickery in the actual issuance of the original check is demonstrated," such as where "the maker of the note could not read or understand the English language or did not have a reasonable opportunity to be informed of what he was signing") (internal citations omitted); *Dalessio v. Kressler*, 6 A.D.3d 57, 61, 773 N.Y.S.2d 434, 436 (2d Dep't 2004) ("The plaintiff does not dispute that he knowingly executed a certified check . . . . Accordingly, the nature of [the] alleged fraud is fraud in the inducement, not fraud in the factum.").

The true cause of action that the Plaintiffs should have pursued is fraud in the inducement, as they claim that they relied upon the alleged misrepresentations made by Citibank when they signed the promissory note. (*See* Compl. ¶ 10 ("The Plaintiff relied on the honesty of the Lender and the independent appraisal of Lighthouse Appraisals in agreeing to enter into the loan.")). "Although [the Plaintiff] argues . . . that the complaint alleges fraud in the factum, the complaint actually asserts—both in form and substance—fraud in the inducement. Indeed, [the Plaintiff's] allegation[s] . . . are a quintessential example of the latter type of fraud. . . . [T]he factual allegations in the complaint have nothing to do with that type of claim." *Ipcon Collections LLC*

*v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (internal citations and footnote omitted)).

However, the Plaintiffs appear to have realized that they would be barred by the statute of limitations from bringing a cause of action for fraud in the inducement. The Plaintiffs did not file the complaint in this action until more than eight years after the allegedly fraudulent inducement. Even if the Court accepted the Plaintiffs' argument that they could not have discovered the fraudulent activities until much later, the Plaintiffs received an appraisal in December of 2013 which showed that the residence was worth much less than $2.2 million. At that point, they were on notice, and had "discovered" the alleged fraud, and had to bring an action for fraud before December of 2015. *See, e.g,* N.Y. C.P.L.R. §§ 213(8), 203(g) (stating that actions for fraud must be brought within two years from when a plaintiff was aware of the fraud or had enough facts that they could have discovered the fraud with reasonable diligence); *see also Gonzales*, 847 F. Supp. 2d at 570 (same).

The Plaintiffs attempted to circumvent the statute of limitations by pleading a cause of action for fraud in the factum, but as stated above, that cause of action has not been properly plead and cannot be sustained.

However, the Plaintiffs would not have been able to plead a cause of action for fraud in the inducement even if they had filed a cause of action before the statute of limitations had run. This is because "[t]he long-established rule in New York is that statements concerning the value of real property are generally not actionable under a theory of fraud or fraudulent inducement." *Newby v. Bank of Am. Corp.*, No. 12-CV-614 SJF AKT, 2013 WL 940943, at *4 (E.D.N.Y. Mar. 8, 2013) (internal citations and quotation marks omitted). There are two reasons for this rule: first, "representations as to value alone are generally matters of opinion upon which no detrimental

9

reliance can occur"; and second, "the doctrine of *caveat emptor* applies to real estate transactions such that a buyer has a duty to satisfy himself or herself of the quality of a bargained purchase price without trusting a seller." *Simms v. Biondo,* 816 F. Supp. 814, 819–20 (E.D.N.Y. 1993) (citations omitted). While courts have found exceptions to the rule of *caveat emptor*, the Plaintiffs do not allege any facts that would qualify for those exceptions. *See Barkley v. United Homes, LLC,* No. 04–CV–875, 2012 WL 2357295, at *5 (E.D.N.Y. June 20, 2012) (stating that "[c]ourts have found exceptions to the rule of *caveat emptor* . . . where sellers concealed facts or induced buyers to refrain from making independent inquiries into the terms of a real estate deal," including where "defendants deliberately steered plaintiffs to other members of the conspiracy in order to prevent their discovery of the true value of the properties at issue"). Therefore, even if the Plaintiffs had brought a claim for fraudulent inducement before the statute of limitations had expired, it would have to be dismissed.

Finally, the Plaintiffs' claim for fraud in the factum cannot be saved by their allegation that "the identity of the true lender was not disclosed to the Plaintiffs at the time of the loan application . . . ." (Compl. ¶ 26). This is a conclusory statement. Furthermore, it does not change the fact that the Plaintiffs knew that they were signing a promissory note with legal consequences. The Plaintiffs allege that Citibank was a party to the promissory note, and that Citibank continues to seek repayment from the Plaintiffs.

Therefore, the Plaintiffs have failed to state a claim for fraud in the factum. Accordingly, the Defendant's motion to dismiss that claim pursuant to Rule 12(b)(6) is granted.

### 2. Appraisal Fraud

#### a. The Relevant Law

"There is no independent cause of action for "appraisal fraud." *Newby*, 2013 WL 940943, at *3 n.6. Therefore the Court will review the Plaintiffs' allegations related to the fraudulent appraisal under a theory of common law fraud. *See id.*

To state a claim for fraud in New York, a plaintiff must sufficiently allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

#### b. Application to the Plaintiffs' Claim

As common law fraud is subject to the statute of limitations contained in N.Y. C.P.L.R. § 213(8) and § 203(g), the Court's analysis of the Plaintiffs' unalleged claim for fraud in the inducement applies with equal force here.

Therefore, the Plaintiffs' cause of action for fraud based upon the Defendant's appraisal is barred both by the statute of limitations, as well as by the doctrine of *caveat emptor*. *See Newby*, 2013 WL 940943, at *5 ("[A] representation by BOA regarding the value of the property would have been an opinion, not a representation of fact, and plaintiffs had an independent duty to form their own opinion. Because plaintiffs have not alleged facts indicating that BOA prevented them from performing their own investigation into the value of the property, BOA's [appraisal] opinion cannot form the basis for a fraud claim." (citing *Weaver v. IndyMac Fed. Bank, FSB,* No. 09–CV–5091, 2011 WL 4526404, at *4 (S.D.N.Y. Sept. 29, 2011) (dismissing claim for appraisal fraud where the "[p]laintiff fail[ed] to sufficiently state that [d]efendant knew the appraisal was inflated,

11

that she intended to defraud [p]laintiff, and that [p]laintiff relied on [d]efendant's appraisal in agreeing to the allegedly inflated purchase price"))).

Accordingly, the Defendant's motion to dismiss the Plaintiff's claim for appraisal fraud pursuant to Rule 12(b)(6) is granted.

### 3. Violation of TILA's Rescission Provision

#### a. The Relevant Law

Section 1635 of TILA provides for an obligor with a right of rescission. It states:

> Except as otherwise provided in this section, in the case of any consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Bureau, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Bureau, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a). Relevant here, section 1635 contains a "time limit for [the] exercise of [the] right." *Id.* at § 1635(f). It provides that:

> An *obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property*, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

12

*Id.* (emphasis added)

The Supreme Court has explicitly stated that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S. Ct. 1408, 1409, 140 L. Ed. 2d 566 (1998); *see also Jesinoski v. Countrywide Home Loans, Inc.*, -- U.S. --, 135 S. Ct. 790, 791, 190 L. Ed. 2d 650 (2015) ("The Truth in Lending Act gives borrowers the right to rescind certain loans for up to three years after the transaction is consummated. . . . [S]o long as the borrower notifies within three years after the transaction is consummated, his rescission is timely.").

### b. Application to the Facts

The Plaintiffs mailed their notice of rescission eight years after they consummated the relevant transaction with the Defendant. The Plaintiffs do not present any case law that would allow this Court to find that their claims under TILA are not barred by the limitations clause contained in the statute. This Court must, of course, follow Supreme Court precedent.

Therefore, the Plaintiffs did not have a right to rescind the transaction with Citibank, and they cannot sustain a cause of action for a violation of TILA. Accordingly, the Defendant's motion to dismiss the Plaintiffs' TILA claim pursuant to Rule 12(b)(6) is granted.

### 4. Injunctive Relief

The Plaintiffs do not respond to the Defendant's argument that a request for a remedy such as an injunction is not a cause of action. The Defendant is correct that "injunctions are remedies, not causes of action," *Miller*, 994 F. Supp. 2d at 558, and therefore, the Plaintiffs' fourth "cause of action" is dismissed pursuant to Rule 12(b)(6).

**D. As to the Plaintiffs' Request for Leave to Amend**

At the end of their memorandum of law in opposition, the Plaintiffs make a short request to amend their complaint. (*See* Mem. of Law in Opp. at 24 ("In the event that any cause of action is dismissed by the court, the plaintiff asks this court for leave to replead any such dismissed cause of action.")). The Plaintiffs do not include a proposed amended complaint, state how any of their claims could be revived by further amendment, or otherwise set forth a basis for such relief.

Not only is this an improper request for leave to file an amended complaint, *Koehler v. Metro. Transp. Auth.*, 214 F. Supp. 3d 171, 178 (E.D.N.Y. 2016) (Spatt, J.) ("Courts have held that a 'bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper under FED. R. CIV. P. 15." (collecting cases)), but because the Court has found that all of the Plaintiffs' claims are barred by various statutes of limitations, any amendments would be futile, *see, e.g., Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (stating that a court should deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party."). Furthermore, as stated above, even if the Plaintiffs had brought this action within the statutory period, they would be unable to sustain claims for fraud based on an allegedly inflated appraisal.

Therefore, the Plaintiffs' request for leave to amend is denied.

### III.  CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the Plaintiffs' complaint pursuant to Rule 12(b)(6) is granted in its entirety. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED:**

Dated: Central Islip, New York

October 17, 2017

                                                      ____*/s/ Arthur D. Spatt*_____

                                                       ARTHUR D. SPATT

                                                  United States District Judge